COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, White and Frucci
Argued at Lexington, Virginia


WILLIAM ELDRED NORWOOD

MEMORANDUM OPINION[*] BY
v.      Record No. 1741-23-3      JUDGE STEVEN C. FRUCCI
NOVEMBER 12, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Eric Weathers, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Israel-David J.J. Healy, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Based on a conditional guilty plea, William Eldred Norwood was convicted of felony

driving under the influence of alcohol, third or subsequent offense within five to ten years, and of

driving while operator's license is revoked or suspended. On appeal, Norwood challenges the

circuit court's denial of his motion to suppress the evidence found following a traffic stop. For the

following reasons, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND[1]

On May 8, 2022, Norwood was driving a blue Nissan in the far-left lane of Interstate 81 near mile marker 195 when Trooper Parnell of the Virginia State Police drove up behind him. In this area, Interstate 81 has three lanes for traffic, a posted speed limit of seventy miles per hour, and a "steep grade" incline. While Norwood was driving in the area, it was daylight and the weather was clear. Trooper Parnell proceeded to follow Norwood for approximately three miles as Norwood was traveling "between sixty-four and seventy miles an hour." During this time, Norwood passed an SUV pulling a trailer in the far-right lane. He then passed a tractor trailer traveling in the middle lane. Afterwards, Norwood remained in the far-left lane for approximately one minute and did not pass any other vehicles. During that time, both lanes to the right of Norwood were clear. While no vehicles passed Norwood, vehicles that were originally in front of Norwood in the far-left lane had now pulled ahead and were hardly in sight of Trooper Parnell. Trooper Parnell then activated his emergency lights and conducted a traffic stop of Norwood's vehicle. Trooper Parnell told Norwood that the reason for the stop was Norwood being in the left lane without passing any vehicles and impeding the flow of traffic. In speaking with Norwood, Trooper Parnell learned that Norwood did not have a valid operator's license. After performing a breathalyzer test and field sobriety tests, Norwood was arrested for driving while intoxicated.

---

[1] On appeal from the denial of a motion to suppress evidence, we "review[] the evidence in the light most favorable to the Commonwealth, as the prevailing party below." *Bagley v. Commonwealth*, 73 Va. App. 1, 8 n.1 (2021). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). Therefore, the court does not include within this background any evidence of the accused in conflict with that of the Commonwealth and applies any fair inferences in favor of the Commonwealth.

On July 10, 2023, Norwood filed a motion to suppress evidence, arguing that all evidence in this case was the result of an unconstitutional seizure of Norwood due to Trooper Parnell not having justification for the traffic stop. The Commonwealth argued that the stop was permissible because there was at least reasonable suspicion that Norwood violated Code § 46.2-804. A hearing was conducted in which Trooper Parnell testified and his vehicle's dash cam footage capturing the incident was admitted into evidence. Finding that the Commonwealth had met its burden of having "a witness . . . articulate a reasonable basis for stopping to further investigate," the circuit court denied his motion.

On August 29, 2023, Norwood entered a conditional plea of guilty to felony driving under the influence of alcohol, third or subsequent offense within five to ten years, and to driving while operator's license is revoked or suspended that preserved his right to appeal the denial of the motion to suppress. This appeal followed.

## II. ANALYSIS

"On review of the trial court's denial of a motion to suppress, an 'appellant bears the burden of establishing that reversible error occurred.'" *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020)). We "examine[] the trial court's application of the law *de novo*, including its assessment of whether reasonable suspicion or probable cause supported a search." *Bagley v. Commonwealth*, 73 Va. App. 1, 13 (2021). "However, we defer to the trial court's 'findings of historical fact,' taking care to review them 'only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008)). Furthermore, "[w]e review issues of statutory interpretation de novo." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). "This same *de novo* standard of review applies to

determining the proper definition of a particular word in a statute." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

"[S]topping a motor vehicle and detaining the operator constitute[s] a 'seizure' within the meaning of the Fourth Amendment." *Mitchell v. Commonwealth*, 73 Va. App. 234, 246 (2021) (first alteration in original) (quoting *Lowe v. Commonwealth*, 230 Va. 346, 349 (1985)). "The stop 'seizes' all occupants of the vehicle." *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (stating "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment"). "Nevertheless, an officer may stop a vehicle, effectively seizing its occupants, when 'there is at least articulable and reasonable suspicion . . . that either the vehicle or an occupant is otherwise subject to seizure for violation of law.'" *Mitchell*, 73 Va. App. at 246 (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

"There are no bright line rules" for "determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." *Id.* (quoting *Hoye v. Commonwealth*, 18 Va. App. 132, 134-35 (1994)). The standard requires "an officer to possess, at the time of the stop, 'a particularized and objective basis for suspecting the particular person stopped.'" *Id.* (quoting *Heien*, 574 U.S. at 60). A "mere hunch" is insufficient, but "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* at 246-47 (quoting *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016)). Importantly, "[t]he possibility that an officer ultimately may prove to be mistaken . . . does not negate, in and of itself, the officer's reasonable, articulable suspicion." *Id.* at 247 (citing *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011)).

> Whenever any roadway has been divided into clearly marked lanes
> for traffic, . . . [a]ny vehicle proceeding at less than the normal speed

of traffic at the time and place and under the conditions existing, shall be driven in the lane nearest the right edge or right curb of the highway when such lane is available for travel except when overtaking and passing another vehicle or in preparation for a left turn or where right lanes are reserved for slow-moving traffic.

Code § 46.2-804(1).

In the case at hand, it is undisputed that Norwood was driving on a roadway that had been divided into clearly marked lanes for traffic. As such, vehicles traveling at "less than the normal speed of traffic" on that roadway would be required, in most instances, to be "driven in the lane nearest the right edge or right curb of the highway" unless "overtaking and passing another vehicle." Code § 46.2-804(1). Notably, Code § 46.2-804 does not define "normal speed of traffic."

When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Evans v. Evans*, 280 Va. 76, 82 (2010) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "Furthermore, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" *Id.* (alteration in original) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)). "To aid us in discerning the [legislature's] intent, we also look at surrounding words in the statute that can indicate a term's meaning." *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 52 (2014) (citing *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604 (2013)).

As such, in defining "normal speed of traffic" in the context of Code § 46.2-804(1), we note that the ordinary meaning of "normal" is "within the range of averageness in conduct, condition, degree, quantity, or the like; not deviating from an established standard, rule,

principle, etc."[2,3]  Furthermore, it is clear by the inclusion of the language "at the time and place and under the conditions existing" that the legislature intended for the "normal speed of traffic" to be dependent upon factors such as time of day, the posted speed limit, and roadway conditions. Code § 46.2-804(1).[4]  In the case at hand, traffic was light, the weather was clear, and it was daylight at the time Norwood was driving on the roadway.  The posted speed limit was seventy miles per hour, but Norwood was often traveling below that speed.  Norwood remained in the far-left lane for approximately one minute while not passing or overtaking any other vehicles. During that time, both lanes to his right were clear and the vehicles that were originally in front of Norwood in the far-left lane had pulled ahead and became hardly in sight of Trooper Parnell. Therefore, looking at all this evidence in the light most favorable to the Commonwealth, Trooper Parnell had a reasonable and articulable suspicion that Norwood was not driving at the "normal speed of traffic" and was violating Code § 46.2-804(1).  As such, the circuit court did not err when it denied the motion to suppress.

### III.  CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[2] *Normal*, *Black's Law Dictionary* (12th ed. 2024).

[3] *See also Normal*, *Collins English Dictionary*, https://www.collinsdictionary.com/dictionary/english/normal (last visited Nov. 8, 2024) (defining "normal" as "usual and ordinary").

[4] As agreed with by both Norwood and the Commonwealth during oral arguments, the use of the language "normal speed of traffic" in Code § 46.2-804(1) is not meant to excuse or permit driving above the posted limit.